UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA J. HELMS, ) | |
| ) | No. CV-07-0358-JPH |
| Plaintiff, ) | |
| ) | ORDER GRANTING DEFENDANT'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on June 23, 2008. (Ct. Rec. 14, 16). Plaintiff Barbara J. Helms ("Plaintiff") filed a reply brief on May 28, 2008. (Ct. Rec. 18). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents the Commissioner of Social Security ("Commissioner"). The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 8). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14).

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on May 22, 2000, and an application for Supplemental Security Income ("SSI") benefits on June 13, 2000,

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 1

alleging disability since April 1, 1995.[1]   (AR 71-73, 382-388). The applications were denied initially and on reconsideration.  An administrative hearing was held before Administrative Law Judge ("ALJ") Paul L. Gaughen on April 11, 2002. (AR 404-443).  On November 7, 2002, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 19-36).  The Appeals Council denied Plaintiff's request for review, and Plaintiff proceeded to the United States District Court.  On July 15, 2004, based upon a stipulation of the parties, the matter was remanded for further administrative proceedings.  (AR 474-475).  The Court directed the ALJ, on remand, to "properly develop an assessment of Plaintiff's residual functional capacity; re-contact Dr. Toews for clarification of the formatting error on his report (citing a different claimant); obtain a supplemental psychological consultative examination; and obtain psychiatric medical expert evidence, if necessary."  (AR 474).

An administrative hearing was held before the ALJ on October 6, 2005, at which time the ALJ heard testimony from Plaintiff, Erika Klossner, medical expert Ronald M. Klein, Ph.D., and vocational expert Tom Moreland.  (AR 631-676).  On January 19, 2006, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 457-467).  The ALJ's decision incorporated by reference his previous decision in this case.  (AR 459).  On September 26, 2007, the Appeals Council denied Plaintiff's request

---

[1] Plaintiff filed subsequent applications for DIB and SSI on August 18, 2004, and, based on those applications, it was determined that the severity of Plaintiff's pulmonary disease equaled Listing 3.02A, effective August 1, 2004.  (AR 457). Therefore, the relevant time period under review is prior to August 1, 2004.

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 2

for review.  (AR 444-447).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed an action for judicial review pursuant to 42 U.S.C. § 405(g) on November 6, 2007.  (Ct. Rec. 2).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, and Plaintiff's brief and will only be summarized here.  Plaintiff was 49 years old on August 1, 2004.  (AR 464).  Plaintiff completed the 11th grade and received her GED in 1973.  (AR 92).  Her past work experience includes work as a food assembler, kitchen; a cafeteria attendant, combination; and a deli clerk/slicer.  (AR 662).  She alleges disability as of April 1, 1995, due to depression, memory and concentration problems, possible dyslexia, breathing problems, arthritis in both hands, a right foot impairment and pleurisy.  (AR 86).  Plaintiff testified at the administrative hearing held on October 6, 2005, that she additionally suffered from symptoms related to hepatitis C.  (AR 652).  Plaintiff also stated that she had regularly attended counseling for her psychological symptoms on a weekly basis since April of 2002.  (AR 652).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported

by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 6

disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during the relevant time period.  (AR 459).  At step two, the ALJ determined that, prior to August 2004, Plaintiff had the severe impairments of chronic obstructive pulmonary disease, bronchitis with a history of asthma, a depressive disorder, NOS, with noted episodes of major depression, drug and alcohol addiction, a personality disorder, NOS, and a cognitive disorder characterized by seizure-like symptoms.  (AR 460-461).  However, without Plaintiff's drug addiction and/or alcoholism[2], the ALJ found that, before August 2004, Plaintiff's severe impairments were bronchitis with a history of asthma and chronic obstructive pulmonary disease and determined that her mental impairments were not severe.  (AR 461).  The ALJ further concluded that, without consideration of Plaintiff's substance abuse, Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 461).

The ALJ found that, prior to August 2004 and without consideration of substance abuse, Plaintiff had the residual functional capacity ("RFC") to perform medium exertion level work with no exposure to fumes and odors.  (AR 463).  He indicated that

---

[2]The ALJ found Plaintiff's substance abuse to be a contributing factor material to the determination of disability.  (AR 461).  Plaintiff does not contest this finding.

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 7

Plaintiff would need to work in an alcohol-free environment, could not do complex memory tasks, needed a structured environment, had poor adaptive skills and decompensated or slowed during adjustment and could not work in close proximity to others because she would distract them. (AR 463). She also had slight limitations on neatness, cleanliness, and accepting criticism and was slow in learning detailed instructions. (AR 463).

At step four of the sequential evaluation process, the ALJ determined that Plaintiff would not be able to perform her past relevant work as a food assembler, cafeteria attendant or deli slicer. (AR 463). However, based on the testimony of the vocational expert and considering Plaintiff's age, educational background, work experience and RFC, the ALJ concluded that, prior to August 2004, Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy. (AR 464-465). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act at any time prior to August 2004. (AR 465-467).

**ISSUES**

Plaintiff argues that she was more limited from a psychological standpoint than as determined by the ALJ. (Ct. Rec. 15 at 14-20). This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.
///
///

**DISCUSSION**

Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence of record with respect to her mental health, failed to follow the directives of the remand order, and improperly rejected the testimony of a lay witness. (Ct. Rec. 15 at 15-20). The Commissioner responds that the ALJ complied with the remand order, appropriately evaluated the medical evidence of record and properly rejected the lay testimony of Ms. Klossner. (Ct. Rec. 19-2 at 7-13).

**A.  Remand Order**

Plaintiff contends that the ALJ erred by not following the directives of the Court's July 15, 2004 remand order. (Ct. Rec. 15 at 15-17). On July 15, 2004, based upon a stipulation of the parties, this case was remanded for further administrative proceedings. (AR 474-475). The Court directed the ALJ, on remand, to "properly develop an assessment of Plaintiff's residual functional capacity; re-contact Dr. Toews for clarification of the formatting error on his report (citing a different claimant); obtain a supplemental psychological consultative examination; and obtain psychiatric medical expert evidence, if necessary." (AR 474).

Plaintiff argues that the ALJ deviated from the Court's remand order by failing to have Dr. Toews rate Plaintiff in work-related categories and by failing to obtain medical expert testimony from a psychiatrist. (Ct. Rec. 15 at 17). Deviation from the Court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review. *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

The ALJ in this case reevaluated Plaintiff's residual functional capacity in accord with the remand order. (AR 459-463). He additionally re-contacted Dr. Toews for clarification of the formatting error on his report (citing a different claimant). Dr. Toews responded that the inconsistency identified in his report was merely a scrivener's error. (AR 611). Dr. Toews submitted a corrected copy of Plaintiff's consultative evaluation. (AR 611-616).

The ALJ also obtained a supplemental psychological consultative examination, in accordance with the remand order, as evidenced by the June 24, 2005 report of Joyce Everhart, Ph.D. (AR 617-628). Finally, the ALJ obtained supplemental medical expert testimony from Ronald Klein, Ph.D. (AR 639-651). While Dr. Klein is not a psychiatrist, the remand order directed the ALJ to obtain psychiatric medical expert evidence "if necessary." (AR 474). The ALJ was thus given discretion with respect to medical expert testimony and, apparently, deemed "psychiatric" medical testimony unnecessary in this case. The ALJ did not act contrary to the remand order by eliciting testimony from Dr. Klein, a psychologist.

Based on the foregoing, it is apparent that the ALJ properly followed the directives of the Court's July 15, 2004 remand order. Plaintiff's argument to the contrary is without merit.

**B. Mental Limitations**

With respect to Plaintiff's mental health, Plaintiff argues that the ALJ erroneously relied on a one-time evaluator and the medical expert over the opinions of Dr. Everhart and Dr. Arnold.
///

1 (Ct. Rec. 15 at 15-19). The Commissioner responds that the ALJ
2 properly evaluated the mental health evidence of record. (Ct.
3 Rec. 19-2).

4 The ALJ found that, prior to August 2004 and without
5 consideration of substance abuse, Plaintiff would need to work in
6 an alcohol-free environment, could not do complex memory tasks,
7 needed a structured environment, had poor adaptive skills and
8 decompensated or slowed during adjustment, could not work in close
9 proximity to others because she would distract them, had slight
10 limitations on neatness, cleanliness, and accepting criticism and
11 was slow in learning detailed instructions. (AR 463). In making
12 this determination, the ALJ evaluated the medical evidence of
13 record pertaining to Plaintiff's mental ability. He also
14 indicated that his prior decision (AR 19-36) fully described
15 Plaintiff's impairments and was incorporated by reference and that
16 the current decision discussed the evidence that had been received
17 subsequent to that decision and clarified the previous decision.
18 (AR 459).

19 On August 18, 2000, James E. Bailey, Ph.D., submitted a
20 report following an evaluation of Plaintiff. (AR 249-253). Dr.
21 Bailey noted that Plaintiff had a long history of substance abuse
22 and that Plaintiff reported using heroin two days prior to the
23 exam. (AR 250). Dr. Bailey indicated that Plaintiff appeared
24 either high or somewhat groggy during the interview and suggested
25 an index of either malingering or heroin intoxication. (AR 250).
26 He indicated that her reported substance abuse was not consistent
27 with the records in the file, which showed more recent use, and he
28 generally doubted her credibility. (AR 251). Dr. Bailey

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 11

diagnosed opioid dependence, continuous, rule out opioid intoxication, and rule out malingering and determined that other Axis I diagnoses were not possible, including depression, due to Plaintiff's continuing substance abuse. (AR 252). He also diagnosed a mixed personality disorder with narcissistic and dependent features, and gave a GAF score of 40.[3] (AR 252).

Jay M. Toews, Ed.D., evaluated Plaintiff on October 29, 2001. (AR 612-616). Dr. Toews documented Plaintiff's long history of substance abuse, primarily heroin, dating back to at least 1996. (AR 612-613). Although Plaintiff stated she had been clean and sober for a couple of years, Dr. Toews noted that this statement contradicted Dr. Bailey's report that Plaintiff had been using heroin two days prior to her visit with him in August 2000. (AR 613).

At the time of the examination, Dr. Toews indicated that Plaintiff smelled of cannabis, but denied using marijuana. (AR 614). Plaintiff exhibited childlike affect and behavior and gave immature responses. (AR 614). Dr. Toews noted that there was significant question regarding malingering and indicated that the results of the malingering assessment suggested a likelihood that Plaintiff was deliberately exaggerating her symptoms. (AR 614-615). Dr. Toews diagnosed malingering, probable, rule out cannabis abuse, opioid dependence in self reported full remission, a depressive disorder, NOS, with anxious features, and borderline

---

[3] A GAF of 40-31 indicates "[s]ome impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 12

intellectual functioning, probable. (AR 616). Dr. Toews also diagnosed Hepatitis A, B and C, asthma, chronic disease, lack of primary support and social isolation and gave a GAF score of 50.[4] (AR 616).

Dr. Toews additionally answered interrogatory requests on September 2, 2002. (AR 378-381). Dr. Toews indicated that his assignment of a GAF score of 50 reflected Plaintiff's appearance at the time of the exam, assessment of intellectual functioning, affective presentation and probable substance abuse. (AR 380). He indicated that it was his impression that Plaintiff was or had recently used marijuana at the time of the evaluation. (AR 380). He further stated that malingering was factored in to the assessment of the GAF score as malingering "was felt to lead to grossly exaggerated physical or psychological symptoms." (AR 380-381).

Ronald M. Klein, Ph.D., testified as a medical expert at the administrative hearing held on October 6, 2005. (AR 639-651). Dr. Klein indicated that Plaintiff's primary clinical diagnosis was malingering. (AR 640). He stated that malingering was referred to repeatedly in the record and was as well supported as any he had viewed in the past two to three years. (AR 640).

While Dr. Klein indicated that he endorsed Dr. Everhart's diagnosis of malingering (AR 651), he did not understand how Dr. Everhart opined on a Mental Medical Source Form that Plaintiff had

---

[4] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 13

moderate to marked impairments (AR 641). Dr. Klein speculated that Dr. Everhart factored out Plaintiff's malingering in deriving her ratings on the form. (AR 649). He suggested that the ALJ disregard Dr. Everhart's findings on the Mental Medical Source Form. (AR 641).

Dr. Everhart examined Plaintiff on or about June 24, 2005. (AR 617-628). Dr. Everhart noted that, inconsistent with the record, Plaintiff reported she had been mostly drug and alcohol free for ten years, she had not experimented with any drugs other than marijuana and pain medication, had used only marijuana and pain medication, and had been clean and sober for fifteen years. (AR 620-621, 622). Results of the MMPI-2 suggested exaggeration of symptoms. (AR 623). Results of the WMS-III did not appear to be a valid estimate of her current memory functioning and suggested malingering. (AR 624). A score of six on the Rey 15 Item Visual Memory Test suggested malingering. (AR 625).

Dr. Everhard diagnosed a depressive disorder, NOS, with psychotic features, malingering, a personality disorder, NOS, with dependent, narcissistic and schizotypal features, opioid dependence, remission status unknown, and a cognitive disorder, NOS, by history and record as well as problems with executive functioning on Trails A and B and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 45-50. (AR 624-625). Dr. Everhart marked boxes on a Medical Source Statement of Ability To Do Work-Related Activities (Mental) form indicating that Plaintiff had several moderate and marked limitations on her ability to perform work-related mental activities. (AR 627-628).
///

However, Dr. Everhart also handwrote on the form, "Caution: note possibility (and diagnosis) of malingering." (AR 627).

While Plaintiff contends that the ALJ erred by failing to provide "proper reasoning for basically rejecting Dr. Everhart's opinion" (Ct. Rec. 15 at 17), the ALJ did not reject Dr. Everhart's report. To the contrary, the ALJ's findings are consistent with Dr. Everhart's narrative opinion which noted several inconsistencies with Plaintiff's drug use reporting and diagnosed malingering, a depressive disorder, NOS, a personality disorder, NOS, a cognitive disorder, NOS, and opioid dependence. (AR 460-461, 624-625). It is apparent that, as suggested by the medical expert (AR 641), the ALJ considered Dr. Everhart's check-box assessment form within the context of her cautionary note regarding the diagnosed and well supported finding of malingering.

Between May 1999 and 2003, John Arnold, Ph.D., also performed several psychological assessments. (AR 212-215, 216-219, 363-366, 368-377, 544-547, 548-555). As noted by Plaintiff, on all of these occasions, Dr. Arnold was of the opinion that Plaintiff had severe mental impairments causing more than slight abnormalities on her ability to work. (Ct. Rec. 15 at 18). However, while Dr. Arnold remarked at the initial evaluation about Plaintiff's extensive drug use history, treatment and relapses, later evaluations fail to comment on the effects of Plaintiff's drug use on her functioning ability despite clear record evidence of continued drug use during that time period.[5] The ALJ discounted

---

[5] Dr. Arnold's final check-box form evaluation, dated August 8, 2003, does, however, indicate that Plaintiff had relapsed three to four times on heroin with the latest relapse three months prior to the August 8, 2003 report. (AR 553).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 15

Case 2:07-cv-00358-JPH   Document 21   Filed 07/07/08


Dr. Arnold's opinions because he did not assess her functioning given the effects of a substance addiction disorder. (AR 32).

The ALJ also found significant that Dr. Arnold noted that personality testing suggested over-endorsement of psychopathology but excluded these findings in assessing Plaintiff's psychological functioning and also suggested that there was a question as to her motivation and effort in prior formal IQ testing. (AR 32). As noted above, the diagnosis of malingering is well supported in the record. *Supra*. Furthermore, the ALJ concluded that Dr. Arnold's assessments were entitled to less weight because Plaintiff saw him on these occasions to be evaluated or reevaluated for benefit eligibility purposes. (AR 462). When a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his assessment. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). The ALJ additionally found that the opinions were not well supported by clinical or laboratory findings. (AR 463). An ALJ may discredit the opinions of a physician that are unsupported by objective medical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Batson v. Barnhart*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ gave specific and legitimate reasons to discount Dr. Arnold's opinions and, thus, did not err in giving minimal weight to his assessments.

Consistent with the ALJ's determination in this case, the weight of the record evidence, as described above, demonstrates that, prior to August 2004, Plaintiff's mental problems would require Plaintiff to work in an alcohol-free environment, she could not do complex memory tasks, she would need a structured

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 16

1  environment, she would have poor adaptive skills and decompensate
2  or slow during adjustment, she could not work in close proximity
3  to others because she would distract them, she would have slight
4  limitations on neatness, cleanliness, and accepting criticism and
5  she would be slow in learning detailed instructions.  The record
6  exhibits Plaintiff's long history of drug use.  As noted by the
7  ALJ in both decisions, "Plaintiff's history of illicit drug-
8  seeking; arrest for welfare fraud and lying to enforcement
9  officers; exaggeration of symptoms; contradictions in self-
10 reporting; malingering of psychopathology as well as a diagnosed
11 factitious neurological disorder totally overshadow her subjective
12 allegations."  (AR 33, 462).
13      The ALJ is responsible for reviewing the evidence and
14 resolving conflicts or ambiguities.  *Magallanes*, 881 F.2d at 751.
15 If evidence supports more than one rational interpretation, the
16 Court must uphold the decision of the ALJ.  *Allen*, 749 F.2d at
17 579.  It is the role of the trier of fact, not this Court, to
18 resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  The
19 Court may not substitute its own judgment for that of the ALJ even
20 if it might justifiably have reached a different result upon de
21 novo review.  42 U.S.C. § 405(g).  The ALJ properly discounted the
22 assessments of Dr. Arnold, *supra*, and, contrary to Plaintiff's
23 arguments, the record does not support more restrictive
24 psychological findings in this case.  The ALJ's RFC determination
25 is in accord with the weight of the record evidence.
26 ///
27 ///
28 ///

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 17

**C.  Lay Witness Testimony**

Plaintiff lastly contends that the ALJ erred by rejecting the testimony of lay witness Erika Klossner, Plaintiff's counselor from Family Services Spokane. (Ct. Rec. 15, at 19-20). The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2). The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ indicated that, while he considered Ms. Klossner's statements, the record evidence was given more weight. (AR 462). An ALJ may discount lay testimony that conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ noted that Ms. Klossner also made no distinction as to the effect of Plaintiff's substance abuse on her mental condition. (AR 462). In this case, the ALJ found Plaintiff's substance abuse to be a contributing factor material to the determination of disability (AR 461), and Plaintiff has not contested this finding. Although Plaintiff asserts that she was substance free at the time of Ms. Klossner's testimony, October 6, 2005, and the ALJ did not ask Ms. Klossner about the effect of Plaintiff's substance abuse (Ct. Rec. 15 at 19-20), the period at issue in this case is prior to August 2004 and it is Plaintiff's burden to establish a prima facie case of disability. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ additionally noted the close relationship between Plaintiff and Ms. Klossner and the

ORDER GRANTING DEFENDANT'S MOTION . . . . ~ 18

possibility that Ms. Klossner's statements were influenced by her desire to help Plaintiff. (AR 462). The undersigned finds that the foregoing reasons provided by the ALJ for rejecting the statements of Ms. Klossner were acceptable reasons for discounting her lay witness testimony.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**IT IS SO ORDERED.**

**DATED** this ___7th___ day of July, 2008.

                                      *S/James P. Hutton*
                                        JAMES P. HUTTON
                        UNITED STATES MAGISTRATE JUDGE